**BUKAKA, INC., Plaintiff,**

v.

**COUNTY OF BENTON, Defendant.**

**Civ. No. 5–93–142.**

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 6, 1993.

---

Randall D.B. Tigue, Minneapolis, MN, for plaintiff.

Michael S. Jesse, Benton County Atty., Foley, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, Chief Judge.

Plaintiff Bukaka, Inc. operates an establishment in Benton County, Minnesota featuring live nude dancing as entertainment. It brought this 42 U.S.C. § 1983 action to prevent enforcement against it of section 11.6 of the Benton County Development Code, which requires a conditional use permit to operate a recreational facility. Plaintiff alleges the development code violates its rights under the first amendment to the United States Constitution as incorporated by the fourteenth amendment. It further alleges that the development code violates article I, section III of the Minnesota Constitution. The matter is before the court on plaintiff's motion for a preliminary injunction.

## I.

Plaintiff has operated the King's Inn of Rice, Minnesota since September 9, 1993. The inn is a licensed restaurant but is not licensed to sell alcoholic beverages. Defendant asserts that the inn does not serve food; for the purposes of this motion plaintiff concedes it functions primarily as a club or recreational facility, not a restaurant. The inn advertises "exotic dancing" and features nude women dancing on an elevated stage to pre-recorded music. Minors under 18 are not admitted. Patrons are charged a five dollar admission fee and are required to purchase a minimum of two beverages. The owners of the building in which the inn is located are Lye and Barbara Quick, of Eagan, Minnesota; Bukaka leases the property from the Quicks.

On September 17, 1993 Lynn Machula, the Benton County Planning and Zoning Administrator, informed the Quicks by mail that the inn could not operate without receiving a conditional use permit from the county. Machula characterized the inn as a "recreational facility" within the meaning of the Benton County Development Code and gave the Quicks until 4:30 pm on September 24th to apply for a conditional use permit. If they did not apply by that deadline, Machula's letter stated, the matter would be turned over to the Benton County Attorney for prosecution. The Quicks did not apply for the permit. Instead, Bukaka brought this action facially challenging the constitutionality of the code.

The development code defines "recreational facility" as:

Any facility, park, or other property intended to be used principally for recreational purposes whether or not for profit and including, but not limited to the following: bowling alleys, go-kart tracks, golf courses, pool halls, vehicle/animal racing or amusement facilities, dance halls, skating facilities, taverns, theaters, fire arm

ranges, camp grounds, carnival rides, beaches, swimming pools.

Benton Cty.Dev.Code § 3.142. Under the code, recreational facilities are permitted only in the "B" and "B-2" business districts and only with a conditional use permit. *Id.* § 7.6.2 and § 7.6A.2.

The standards for granting a conditional use permit include the following:

In granting a conditional use permit, the Planning Commission shall consider the effect of the proposed use on the health, safety, morals, and general welfare of the occupants of surrounding land and water bodies. Among other things, the Planning Commission shall make the following findings, where applicable:

(1) The use will not create an excessive burden on parks, schools, streets and other public facilities and utilities which serve or are proposed to serve the area.

(2) The use will be sufficiently compatible or separated by distance or screening from adjacent agricultural or residentially zoned or used land so that existing homes will not be depreciated in value and there will be no deterrence to development of vacant land.

(3) The structure and sight shall have an appearance that will not have an adverse effect on adjacent properties.

(4) The use in the opinion of the Planning Commission is reasonably related to the existing land use.

(5) The use is consistent with the purposes of the Development Code and the purposes of the zoning district in which the applicant intends to locate the proposed use.

(6) The use is not in conflict with the Land Use Plan of the County.

(7) The use will not cause traffic hazards or congestions.

*Id.* § 11.6.

The code does not provide officials a time frame by which they must grant or deny an application. An applicant who has been de-

nied a conditional use permit may not reapply for six months. *Id.* § 11.8. Applicants may appeal an adverse decision to the County Board. *Id.* § 11.4.7. The code does not specify the board's procedure for deciding appeals or give a time limit for such decisions.

The development code provides both civil and criminal penalties for violations. The county attorney may institute civil proceedings to "restrain, correct, or abate" code violations. *Id.* § 11.10.2. The county attorney may also prosecute violators; each day's violation is a separate misdemeanor. *Id.* § 11.10.1.

Plaintiff alleges jurisdiction pursuant to 28 U.S.C. § 1343 and § 1367.

## II.

Defendant argues this action is not yet ripe because plaintiff failed to apply for a conditional use permit or to exhaust administrative remedies.[1] Plaintiff responds that it need not follow the code's provisions before bringing a challenge because the code is overbroad. It further asserts that a plaintiff in a 42 U.S.C. § 1983 action need not exhaust state administrative remedies before bringing suit.

Facial challenges to legislation are permitted where a licensing scheme vests unbridled discretion in the decision maker and the regulation is challenged as overbroad. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225, 110 S.Ct. 596, 604, 107 L.Ed.2d 603 (1990). Failure to place time limits on the decision maker is a type of unbridled discretion. *Id., citing Freedman v. Maryland,* 380 U.S. 51, 56–57, 85 S.Ct. 734, 737–38, 13 L.Ed.2d 649 (1965). The code places no time limits on the planning commission or the appeals board. It therefore appears to vest unbridled discretion in the county's decision makers, *see FW/PBS,* 493 U.S. at 225, 110 S.Ct. at 604, and is susceptible to facial challenge.

---

1. Defendant argues that Bukaka failed to appeal under the development code from Lynn Machula's letter to the Quicks. Under the code, aggrieved parties may appeal any "order, requirement, decision, or determination made by any administrative official charged with enforcing this ordinance." Benton Cty.Dev.Code § 11.4.7. Whether Machula's letter fits within the ordinance providing for appeal need not be decided under the present circumstances.

■ A plaintiff in a 42 U.S.C. § 1983 suit need not exhaust state administrative remedies prior to commencing an action in federal district court. *McNeese v. Bd. of Education,* 373 U.S. 668, 675, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963), *citing Monroe v. Pape,* 365 U.S. 167, 181, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1960). For this reason plaintiff need not appeal the Benton County planning administrator's decision before bringing this action.

■ A party seeking a preliminary injunction must demonstrate: (1) that it is threatened with irreparable harm; (2) that this harm outweighs any injury which granting the injunction will inflict on the other parties; (3) that the movant will probably succeed on the merits; and (4) that the public interest favors an injunction. *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 624 (8th Cir.1987); *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109 (8th Cir.1981). The probability of success is not to be weighed woodenly. *General Mills,* 824 F.2d at 624. Instead, "the essential inquiry in weighing the propriety of issuing a preliminary injunction is whether the balance of other factors tips decidedly toward the movant and the movant has also raised questions so serious and difficult as to call for more deliberate investigation." *Id.* at 624–25.

Plaintiff argues it will suffer irreparable harm if a preliminary injunction is not granted because it will be forced to chose between exercising its first amendment rights or sustaining criminal penalties. In support of this argument it points to the code, which authorizes criminal prosecution for violations. Defendant responds that it contemplated only civil enforcement and that criminal prosecution is unlikely.

■ Loss of first amendment freedoms constitutes an irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (plurality opinion) (stating that "[t]he loss of first amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). Not all such injuries justify a preliminary injunction. *Doran v. Salem Inn,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975). When, however, chilling of free expression is combined with the threat of sanctions, a preliminary injunction is warranted. *ILQ Investments, Inc. v. City of Rochester,* 816 F.Supp. 516 (D.Minn.1993).

■ Defendant states that the threat of criminal prosecution is minor, but it appears to have reserved the right to use all available enforcement mechanisms. The possibility of criminal enforcement remains, and civil enforcement action to prevent plaintiff from operating its business without a permit is likely. Plaintiff has demonstrated the likelihood of irreparable harm.

Plaintiff contends that its first amendment rights outweigh any harm to defendant. Benton County responds that it will suffer great harm if the court issues a preliminary injunction because it will be unable to enforce its zoning ordinance. It further argues that any harm to plaintiff is minor because the inn could operate as a restaurant while the code's legality is determined.

■ Each side in this case has an important interest, but on the record before the court the balance of harms favors granting a preliminary injunction. A preliminary injunction will impair defendant's ability to exercise its police powers. *See ILQ Investments,* 816 F.Supp. at 522. On the other hand, the threat to plaintiff's first amendment rights is serious and imminent. Plaintiff is forced to chose between suffering sanctions and foregoing its right to engage in protected activity. First amendment rights are entitled to protection under the law even though they may at times be unpopular. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 79, 101 S.Ct. 2176, 2188, 68 L.Ed.2d 671 (1981) (Blackmun, J., concurring).

■ Live stage performances featuring nude dancing enjoy first amendment protection. *Mount Ephraim,* 452 U.S. at 62, 101 S.Ct. at 2179; *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). Zoning ordinances are not invalid merely because they regulate the commercial exploitation of protected expression, however. *Young v. American Mini Theatres,* 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976). Adult-oriented businesses may

be subject to content neutral time, place and manner restrictions that are designed to advance a substantial government interest and that leave open alternative channels of communication. *City of Renton v. Playtime Theatres,* 475 U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). Laws of general application that impact protected expression in some contexts, but not others, are subject to the same scrutiny. *Barnes v. Glen Theatres, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), *citing United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (upholding statute prohibiting public nudity as applied to adult entertainment).

The Benton County ordinance, like the public nudity prohibition in *Glen Theatres,* is content neutral because it applies to all businesses defined as "recreational facilities," not merely those with expressive aspects. *See Id.* 501 U.S. at 570–71, 111 S.Ct. at 2463. The code itself refers to the county's interest in maintaining local health, safety and welfare through zoning. *See, e.g. Euclid v. Ambler Realty,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). It appears, however, that no alternative channels of communication are available since "recreational facilities" may only be located in "B" and "B–2" business districts *and* with a conditional use permit.

Benton County prohibits all "recreational facilities" from operating without a permit. As defined by the code, these include uses unlikely to implicate first amendment protections, such as bowling alleys, golf courses, fire arms ranges and carnival rides. The code section sweeps very broadly and encompasses some uses undeniably entitled to first amendment protection, however, such as cinemas and live theaters.

The code provides no alternatives for those wishing to engage in such protected uses. All cinemas and theaters must apply for and be granted permits to operate. No part of Benton County is available as of right to those businesses entitled to first amendment protection. This alone raises questions about the constitutionality of the development code. *Compare Mount Ephraim,* 452 U.S. at 77, 101 S.Ct. at 2187 (striking down ordinance prohibiting all live entertainment) *with City of Renton,* 475 U.S. at 53–54, 106 S.Ct. at 931–32 (upholding zoning ordinance restricting adult businesses to five percent of city).

Plaintiff further argues that the code is unconstitutional because it gives officials too much discretion in application. Regulations providing officials with unfettered discretion to deny licenses or permits on the basis of content of protected speech are unconstitutional. *City of Lakewood v. Plain Dealer Publ. Co.,* 486 U.S. 750, 769–72, 108 S.Ct. 2138, 2150–52, 100 L.Ed.2d 771 (1988) (striking down ordinance giving mayor authority to impose "terms and conditions deemed necessary and reasonable" in issuing permits for newspaper boxes); *c.f. Forsyth County, Georgia v. Nationalist Movement,* — U.S. ——, ——, 112 S.Ct. 2395, 2403, 120 L.Ed.2d 101 (1992) (striking down parade permit ordinance requiring that marchers pay unspecified fees to be determined by officials).

The vague language of the development code raises serious questions about its constitutionality. The code permits the planning commission to consider whether a proposed use is "consistent with the purposes" of the code, whether the use has an "appearance that will not have an adverse effect on adjacent properties", and whether it is "reasonably related" to existing land use. Moreover, the code allows the commissioners to consider the above factors in light of "health safety, morals and general welfare." Under the standard set forth in *City of Lakewood,* 486 U.S. at 769–72, 108 S.Ct. at 2150–52, these provisions appear to give the commissioners unconstitutionally broad discretion.[2]

---

2. Defendant cites *Christian Gospel Church, Inc. v. City and County of San Francisco,* 896 F.2d 1221 (9th Cir.1990), in support of its argument that the code does not provide officials with excessive discretion. In that case the Ninth Circuit upheld a local ordinance preventing churches from operating in residential neighborhoods without a conditional use permit. *Id.* at 1224–26. Using free exercise and equal protection analysis, the court concluded the ordinance was constitutional. The issue of whether the conditional use system violated the first amendment's free speech clause was never raised. *Christian Gospel Church* is therefore not controlling.

Plaintiff also argues that the statute is unconstitutional because it contains no time limit by which the planning commission must accept or deny a permit application. A regulation that allows officials prior restraint over protected activity must be carefully circumscribed: it must limit the time within which the licensor must issue the license and must provide for prompt judicial review. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224–27, 110 S.Ct. 596, 603–05, 107 L.Ed.2d 603 (1990) (licensing scheme for adult entertainment); *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (licensing scheme for adult movies). Lack of the procedural safeguards required by *Freedman* and *FW/PBS* raises grave questions about the code's constitutionality.

The code allows no theaters in Benton County as a matter of right; all those who wish to engage in such protected activity must apply for permits. Moreover, it allows considerable discretion in application and does not provide for prompt decision making or speedy judicial review. All these factors make the code constitutionally suspect. At this time plaintiff has made an adequate showing of success on the merits to warrant injunctive relief.

The parties cite conflicting public interests. Plaintiff raises important first amendment rights. Defendant acts to enforce its zoning ordinance, which can protect the welfare, safety and health of residents. Given plaintiff's strong showing of likelihood of success on the merits, however, the public interest is best served by preventing enforcement of the development code.

Plaintiff has demonstrated that it will suffer irreparable harm if its motion is denied. It has raised serious questions regarding the constitutionality of the ordinance. The equities favor maintaining the status quo until the merits of the case are decided. Plaintiff's request for a preliminary injunction should therefore be granted.

Plaintiff requests that the court waive the security ordinarily required under Rule 65(c) of the Rules of Civil Procedure. Plaintiff asserts that no demonstrable harm will befall defendant if it is wrongfully restrained from enforcing the code pending the outcome of this action. Defendant does not appear to object to the waiver and has not pointed to any costs or monetary damages it might incur if it were enjoined from enforcing the code's conditional use permit requirement. Moreover, plaintiff seeks to vindicate important first amendment rights. Requiring it to provide a security could prevent judicial review of the code's constitutionality. Under the circumstances, the requirement of a security should be waived.

### ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that the motion of the plaintiff for a preliminary injunction is granted, and defendant and its agents, officers, employees, and persons acting under its direction and control, are enjoined from enforcing Benton County Development Code § 11 against plaintiff, its agents, officers, employees, or persons acting under its direction and control.