**KISMET INVESTORS, INC., Appellant,**

v.

**COUNTY OF BENTON, Respondent.**

**No. C9–00–65.**

Court of Appeals of Minnesota.

Sept. 12, 2000.

Review Denied Nov. 15, 2000.*

* BLATZ, C.J., took no part in the consideration or decision of this case.

Randall D.B. Tigue, Randall Tigue Law Office, Minneapolis, for appellant.

Kenneth H. Bayliss III, Quinlivan & Hughes, St. Cloud, for respondent.

Considered and decided by LANSING, Presiding Judge, KLAPHAKE, Judge, and PETERSON, Judge.

## OPINION

LANSING, Judge

Kismet Investors, Inc., appeals the district court's decision affirming Benton County's denial of Kismet's application for a variance to allow King's on the Lake, an adult cabaret, to continue operating in its existing location. Kismet also appeals from the court's summary judgment that the Benton County ordinance making King's an unlawful use does not violate the First Amendment. Because we conclude that the county reasonably denied the variance and that the ordinance does not violate the First Amendment, we affirm.

## FACTS

King's on the Lake, also called King's Inn, is a nude-dancing establishment or adult cabaret located in Benton County. Before September 1993, the building that now houses King's housed several restaurants. When Bukaka, Inc., Kismet's predecessor-in-interest, began operating King's as an adult cabaret in September 1993, the county zoning and planning administrator notified Bukaka that it would need a conditional-use permit to operate an adult cabaret. *See Bukaka, Inc. v. County of Benton,* 852 F.Supp. 807, 809 (D.Minn.1993). Bukaka sought and obtained injunctive relief against Benton County's conditional-use requirement on the grounds that it allowed Benton County administrators too much discretion to satisfy First Amendment requirements. *See id.* at 813 (granting preliminary injunction); see also *Mga Susu, Inc. v. County of Benton,* 853 F.Supp. 1147, 1154 (D.Minn.1994) (granting permanent injunction).

In June 1993, the Benton County Planning Commission began considering the need for an ordinance to govern adult-use establishments. In January 1994, the commission recommended to the Benton County Board of Commissioners a six-month moratorium on new adult uses in Benton County. The board passed the moratorium after a public hearing at which no adverse comments were received. On July 14, 1994, the planning commission recommended to the county board that it enact an amendment to the development code, designated Ordinance 242, to govern adult uses. The board, again after receiving no adverse comment at a public hearing, passed the ordinance on July 19, 1994.

Ordinance 242 permits adult uses in areas zoned B–1, B–2, I–1, and I–2 so long as no adult use is located within 500 feet of any area zoned R–1, R–2, or R–3, or within 500 feet of any school, church, daycare facility, hotel, or public park. Benton County, Minn., Development Code § 7.10.2(A) (1998). The ordinance defines adult uses to include "adult enterprises, businesses or places open to some or all members of the public at or in which there

is an emphasis on the presentation, display, depiction or description of 'specified sexual activities' or 'specified anatomical areas.'" *Id.* § 7.10.1. The ordinance designates existing adult uses as nonconforming uses until July 31, 1998, and unlawful uses after that date. *Id.* § 7.10.3.

Kismet purchased King's in January 1997 and the land on which King's is located in January 1998. Kismet continued to operate King's as an adult cabaret. On July 22, 1998, just days before King's would become an unlawful use, Kismet applied to the Benton County Board of Adjustment for a variance from Ordinance 242.

At a public hearing on the variance application, the board heard testimony from Keith Keller, Kismet's owner, and from many King's employees. Keller testified that Kismet's predecessors had made improvements to King's that cost more than $300,000 and that these improvements made the building suitable only for an adult cabaret. King's employees testified to personal hardships that they would suffer if no longer able to work at King's. Bruce McGlaughlin, an expert planning consultant for King's, testified that King's met the criteria for a variance and that King's did not cause the secondary effects that were the basis for enacting Ordinance 242. The board also heard testimony from Benton County citizens opposed to the variance.

In addition to testifying, McGlaughlin submitted a planning review that summarized his empirical study of King's. The study concluded that King's operation did not result in increased police calls or lower property values. The review also critically analyzed the studies from other municipalities and counties on which Benton County based its conclusion that adult uses lead to adverse secondary effects. McGlaughlin concluded that most of the studies were (1) misrepresented; (2) biased; (3) methodologically flawed; and/or (4) conducted under circumstances distinguishable from Benton County's.

The board issued a written order denying the variance. The board found that King's use was not prohibited in its current zoning district, but that the requested variance was not in harmony with the general purposes of the development code. The board further found that Kismet had not demonstrated a hardship unique to its property, and that the variance, if granted, would alter the family-neighborhood character of the area.

In response, Kismet brought this action, requesting that the district court (1) compel the county to grant a variance; (2) declare the ordinance unconstitutional; (3) declare unreasonable the amortization of King's nonconforming use; (4) grant a temporary injunction prohibiting enforcement of the ordinance; and/or (5) find a taking and compel the county to condemn the land and pay fair value.

The district court denied Kismet's motion for an injunction and affirmed the county's denial of the variance. The county then moved for summary judgment on the remaining claims. The district court granted the motion against all claims except the constitutional claim. The court found a material issue of fact on whether there were alternative avenues of communication as required by the First Amendment and held an evidentiary hearing on that issue. Relying on evidence produced at the hearing that 100 alternative sites were available for adult uses in Benton County, the district court found the Benton County ordinance constitutional.

Kismet appeals the district court's decision affirming the county's denial of the variance and summary judgment ruling the Benton County ordinance constitutional.

## ISSUES

I.   Was the board's denial of the variance unreasonable?

II.   Does Ordinance 242 violate the First Amendment to the U.S. Constitution?

## ANALYSIS

### I

▬ A board of adjustment has broad discretion to grant or deny variances, and we review the exercise of that discretion to determine whether it was reasonable. *VanLandschoot v. City of Mendota Heights,* 336 N.W.2d 503, 508 (Minn.1983); *Rowell v. Board of Adjustment,* 446 N.W.2d 917, 921 (Minn.App.1989), *review denied* (Minn. Dec. 15, 1989). In determining reasonableness, we are guided by the standards set out in the relevant county ordinance, but a board's authority to grant variances under the ordinance may not exceed the power granted by statute. *Rowell,* 446 N.W.2d at 921. When proceedings before a board are fair and complete, appellate review is based on the record of the board's proceedings, not the district court's findings or conclusions. *Swanson v. City of Bloomington,* 421 N.W.2d 307, 313 (Minn.1988); *VanLandschoot,* 336 N.W.2d at 508.

County boards of adjustment have the exclusive power to grant variances from their zoning ordinances. Minn.Stat. § 394.27, subd. 7 (1998). A variance may be granted only if it is in harmony with the general purposes and intent of local zoning ordinances and if strict enforcement of those zoning ordinances will cause "practical difficulties" or "particular hardship." *Id.* The county variance statute is worded differently from the municipality variance statute, which allows variances only on a showing of "undue hardship" and does not refer to practical difficulties. *See* Minn. Stat. § 462.357, subd. 6(2) (1998).

Under both statutes, however, "hardship" means that (1) "the property in question cannot be put to a reasonable use" absent the variance; (2) "the plight of the landowner is due to circumstances unique to the property [and] not created by the landowner;" and (3) "the variance, if granted, will not alter the essential character of the locality." Minn.Stat. §§ 394.27, subd. 7; 462.357, subd. 6(2). Economic consider-ations alone do not constitute hardship if there is a reasonable use for the property absent a variance. Minn.Stat. §§ 394.27, subd. 7; 462.357, subd. 6(2). And, "[n]o variance may be granted that would allow any use that is prohibited in the zoning district on which the subject property is located." Minn.Stat. § 394.27, subd. 7. The Benton County Development Code outlines identical factors for consideration of variance applications. Development Code, supra, § 11.5.1.

▬ The landowner applying for a variance carries the "heavy burden" to show that the variance is justified. *Luger v. City of Burnsville,* 295 N.W.2d 609, 612 (Minn.1980). Thus, variances are distinguishable from special- or conditional-use permits, which generally should be granted when an applicant meets the conditions specified in the ordinance, and for which the burden rests with the opposing party to show facts compelling denial. *Id.; Westling v. City of St. Louis Park,* 284 Minn. 351, 355–56, 170 N.W.2d 218, 221–22 (1969).

▬ Minnesota courts have recognized the difference between use and area variances. *In re Appeal of Kenney,* 374 N.W.2d 271, 274 (Minn.1985); *Rowell,* 446 N.W.2d at 922. Use variances allow a use prohibited under the zoning ordinance; area variances control area, height, setback, density, and parking requirements for uses that are permitted by the ordinance. *Kenney,* 374 N.W.2d at 274; *see generally* 3 Kenneth H. Young, *Anderson's American Law of Zoning* § 20.06–.07 (4th ed.1996). Kismet seeks to vary the uses permitted for its property under the zoning ordinance and thus seeks a use variance.

▬ In Minnesota, most use variances are prohibited by statute. Minn.Stat. § 394.27, subd. 7 (no variance shall be allowed if use prohibited in zoning district). Local governments may grant use variances, however, when a use is not prohibited in the zoning district, but the use is

limited by another portion of the zoning ordinance. *See Kenney,* 374 N.W.2d at 274–75 (holding county had authority to grant use variance from ordinance prohibiting boathouses or additions to boathouses). The parties agree that King's use is not prohibited in its zoning district, but is instead prohibited by the adult-use sections of the development code. Thus, this case falls within the small number of use variances allowable under Minnesota statutes.

▮ Kismet disputes the board's finding that Kismet failed to demonstrate hardship to support its requested variance. Kismet argues that substantial and costly improvements to the building demonstrate hardship. Kismet cites Minnesota variance cases affirming findings of hardship based on financial investment combined with practical difficulties of complying with the zoning ordinance. Each of the cases Kismet cites, however, deals with an area variance, not a use variance, which is what Kismet seeks. *See Merriam Park Community Council, Inc. v. McDonough,* 297 Minn. 285, 293, 210 N.W.2d 416, 421 (1973) (affirming variances from setback requirements, parking requirements, and maximum number of apartment units), *overruled on other grounds by Northwestern College v. City of Arden Hills,* 281 N.W.2d 865 (Minn.1979); *Arcadia Dev. Corp. v. City of Bloomington,* 267 Minn. 221, 228, 125 N.W.2d 846, 851 (1964) (holding that city's denial of variance from sign-standards ordinance was arbitrary and capricious); *Rowell,* 446 N.W.2d at 922–23 (affirming variance from setback requirements).

Although courts historically have required variance applicants to demonstrate that there was no other reasonable use for their land, some jurisdictions, including Minnesota, have more recently recognized that area variances may be granted on a lesser showing of practical difficulties. *See Rowell,* 446 N.W.2d at 922 (citing *McDonough,* 297 Minn. at 292, 210 N.W.2d at 420); *see also Ogawa v. City of Des Peres,*

745 S.W.2d 238, 242 (Mo.Ct.App.1987) (applying lower standard for area variances); *Ivancovich v. City of Tucson Bd. of Adjustment,* 22 Ariz.App. 530, 529 P.2d 242, 250 (1974) (same); *Sprague–Covington Co. v. Zoning Bd. of Review,* 102 R.I. 317, 230 A.2d 419, 420 (1967) (same); *see generally* Young, *supra,* § 20.48–.51.

▮ Kismet's argument requires us to consider whether a lesser showing of practical difficulties can justify a use variance. Minnesota appellate courts have not directly addressed this issue, but other jurisdictions that recognize the lower practical-difficulties standard for *area* variances continue to require the more demanding hardship standard for *use* variances. *See, e.g., Ivancovich,* 529 P.2d at 250 (use variances require more stringent showing). After a careful review of the variance statute and the relevant precedents, we conclude that Minnesota landowners seeking use variances must demonstrate that they will suffer particular hardship absent the variance. Practical difficulties alone cannot justify a use variance.

We recognize that Minnesota's county variance statute appears to cast practical difficulties *or* particular hardship in the alternative. But the Minnesota legislature adopted this dual variance standard in 1974, when the differing treatment of use and area variances was well established in the caselaw. *See* 1974 Minn. Laws ch. 571, § 27; *Meister v. Western Nat'l. Mut. Ins. Co.,* 479 N.W.2d 372, 378 (Minn.1992) (stating courts should presume legislature acted with understanding of existing, related legislation). The statute, read in the context of the caselaw, supports the conclusion that the standard of practical difficulties was intended to apply to area variances and the standard of particular hardship was intended to apply to use variances. *See In re Village of Bronxville,* 1 A.D.2d 236, 150 N.Y.S.2d 906, 908 (1956) (interpreting nearly identical New York variance statute allowing variances based on "practical difficulties" or "unnecessary hardship" to create two

different variance standards—one for area variances and one for use variances). Moreover, to interpret the statutory language to apply both standards to use variances would read the more demanding particular-hardship standard out of the statute. *See* Minn.Stat. § 645.17 (1998) (stating legislature intends entire statute to be effective). Our construction of the statute gives practical meaning to both standards.

Applying the particular-hardship standard, we must next determine whether the board reasonably found that Kismet's property could be put to other reasonable uses; that Kismet's plight was not unique to the property; and that granting Kismet's requested variance would change the essential character of the locality.

■ The record supports the board's finding that there are other reasonable uses for Kismet's property, including a restaurant or resort. Kismet argues that improvements to the property make it useful only as an adult cabaret. A landowner's significant investment in the property, however, does not demonstrate the absence of other reasonable uses. *See* Minn. Stat. § 394.27, subd. 7 (stating economic considerations alone do not justify variance). Some courts have found hardship when the costs of alternative uses are so prohibitive that they will effectively prevent the property from being put to another use. *See generally* Young, *supra*, § 20.22, at 492–93 & n. 13. But Kismet has only shown the cost of remodeling King's to operate as an adult cabaret; Kismet has offered no evidence on the costs of remodeling the building for alternative uses or evidence that the costs would be prohibitive.

Kismet has also failed to demonstrate that its plight is unique to the land. Kismet's circumstances as the only landowner currently seeking to operate as an adult use in Benton County does not make its plight unique. The adult-use ordinance applies in a similar fashion to all those who own commercially or industrially zoned property within 500 feet of a protected use. None of these landowners may operate adult uses on their land. *See Garibaldi v. Zoning Bd. of Appeals*, 163 Conn. 235, 303 A.2d 743, 745 (1972) ("[i]t would be a rare case where * * * a regulation which prescribes a minimum distance between certain types of liquor outlets would cause a hardship different in kind from that felt by other properties in a zone").

Further, Kismet's failure to show that other uses are cost prohibitive prevents it from claiming a unique plight based on its investment. *Cf. Halberstadt v. Borough of Nazareth*, 546 Pa. 578, 687 A.2d 371, 373–74 (1997) (affirming variance because razing heavy fortress-like building for alternative uses cost prohibitive); *see generally* Young, *supra*, § 20.37. The board reasonably concluded that Kismet's plight was not unique to the land.

Kismet argues that its predecessor made improvements to the property in reasonable reliance on the federal injunctions against Benton County's conditional-use-permit requirement. This argument is inapposite. The injunction against Benton County's unconstitutional conditional-use-permit requirement included no guarantee that Benton County would not find a constitutionally permissible method of regulating adult uses. *Cf. Bruzzese v. Board of Appeals*, 343 Mass. 421, 179 N.E.2d 269, 271 (1962) (reasoning that fact that plaintiff spent money in anticipation of being granted a variance did not justify a finding of hardship).

Because it has demonstrated neither that its land can be put to no other reasonable use nor that its plight is unique, Kismet has not met its burden to show particular hardship. Accordingly, we affirm the board's denial of a variance.

## II

The district court granted summary judgment on Kismet's claim that the Benton County ordinance violated the First Amendment, and thus we review that rul-

ing under a summary judgment standard. *See Cummings v. Koehnen,* 568 N.W.2d 418, 420 (Minn.1997) (on appeal from summary judgment, reviewing court determines whether case raises genuine issues of material fact and whether district court erred in application of law). But because the issue of reasonable alternative avenues of communication received an evidentiary hearing, we will not reverse the district court's findings on that issue unless they are clearly erroneous. See Minn. R. Civ. P. 52.01 ("[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous"); *DI MA Corp. v. City of St. Cloud,* 562 N.W.2d 312, 321 (Minn.App.1997), *review denied* (Minn. July 28, 1997).

Although statutes and ordinances generally carry a presumption of constitutional validity, when an ordinance allegedly infringes First Amendment rights, the local government bears the burden of demonstrating that the ordinance is constitutional. *See Association of Community Org. for Reform Now v. City of Frontenac,* 714 F.2d 813, 817 (8th Cir.1983) (citing *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577–78, 29 L.Ed.2d 1 (1971)); *see also J & B Entertainment, Inc. v. City of Jackson,* 152 F.3d 362, 370–71 (5th Cir.1998); *Phillips v. Borough of Keyport,* 107 F.3d 164, 172–73 (3d Cir.1997). This distinguishes First Amendment challenges to zoning ordinances from police-power challenges, which require the challenger to demonstrate an unconstitutional exercise of a local government's police powers. *See, e.g., City of St. Paul v. Dalsin,* 245 Minn. 325, 329, 71 N.W.2d 855, 858 (1955) (burden on appellant to show ordinance not within police power).

Ordinances that regulate adult uses based on their secondary effects are reviewed as time, place, manner regulations. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 49, 106 S.Ct. 925, 930, 89 L.Ed.2d 29 (1986). Such ordinances must be content-neutral, must be designed to advance a substantial government interest, and must allow reasonable alternative avenues of communication. *Id.* at 50, 106 S.Ct. at 930; *Holmberg v. City of Ramsey* 12 F.3d 140, 142 (8th Cir.1993) (*Holmberg I*); *City of Crystal v. Fantasy House, Inc.,* 569 N.W.2d 225, 229 (Minn. App.1997), *review denied* (Minn. Nov. 18, 1997).

Courts have recognized ordinances that attempt to prevent the adverse secondary effects of adult uses as content-neutral regulations that advance a substantial government interest. *See City of Erie v. Pap's A.M.,* 529 U.S. 277, ——, 120 S.Ct. 1382, 1392–95, 146 L.Ed.2d 265 (2000) (plurality opinion); *Renton,* 475 U.S. at 48–49, 106 S.Ct. at 929–30; *Fantasy House,* 569 N.W.2d at 229. And the Supreme Court has held that a city need not demonstrate secondary effects within its own experience, but instead may rely on studies conducted by other cities, so long as the studies are "reasonably believed to be relevant to the problem that the [city] addresses." *Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931.

We conclude, as did the district court, that Ordinance 242 is content-neutral and designed to advance a substantial government interest. The preamble to Ordinance 242 includes findings that adult uses cause secondary effects and states that the ordinance is intended to ameliorate the secondary effects of adult uses in Benton County. And the ordinance reasonably relies on adult-use studies from St. Paul; Indianapolis; Los Angeles; Phoenix; Rochester, Minnesota; Adams County, Colorado; and Amarillo, Texas.

Kismet argues that Benton County's reliance on these studies was unreasonable because the studies are flawed, because they address circumstances different from Benton County's, and because King's was unable to demonstrate empirically that its operation has not caused secondary effects. We reject these arguments for several reasons.

First, neither Kismet nor its predecessor raised these issues before the board of commissioners at the public hearings held before the adoption of Ordinance 242. In determining whether the county reasonably relied on the studies, we necessarily review the information available to the county when it passed the ordinance. *See City of Ramsey v. Holmberg,* 548 N.W.2d 302, 306 (Minn.App.1996) *(Holmberg II)* (studies that were not before city when it enacted the ordinance failed to raise a genuine issue on whether "the city reasonably believed that the businesses to which the ordinance applies produce at least some of the unwanted secondary effects experienced by other cities"), *review denied* (Minn. Aug. 6, 1996). At best, Kismet's criticism of the studies raises a question of whether adult uses actually cause secondary effects. The resolution of that question is precisely the type of fact-finding best left to the county's comparatively superior ability to "amass and evaluate the vast amount of data" available and "make predictive judgments" about its own circumstances. *Turner Broad. Sys., Inc. v. F.C.C.,* 520 U.S. 180, 195, 117 S.Ct. 1174, 1189, 137 L.Ed.2d 369 (1997) (quotation omitted). It is not our function, "at least in absence of overwhelming evidence to the contrary, to second-guess the scientific accuracy of a legislative determination of fact." *Minnesota State Bd. of Health by Lawson v. City of Brainerd,* 308 Minn. 24, 32, 241 N.W.2d 624, 629 (1976).

Second, the county reasonably relied on adult-use studies addressing uses similar to the adult uses covered by Ordinance 242. *See Holmberg II,* 548 N.W.2d at 306 (local government may reasonably rely on studies addressing "reasonably similar businesses") (quoting *ILQ Investments, Inc. v. City of Rochester,* 25 F.3d 1413, 1418 (8th Cir.1994)). Finally, the county need not demonstrate which secondary effects are attributable to each of its adult uses, but may pass ordinances to address the secondary effects of adult uses as a class and to address both existing and potential adult uses in Benton County.

*See Mitchell v. Commission on Adult Entertainment Establishments,* 10 F.3d 123, 138 (3d Cir.1993) (stating that state need only show that adult entertainment establishments as a class cause secondary effects); *see also Vicary v. City of Corona,* 119 F.3d 8, 1997 WL 406768 (9th Cir. July 18, 1997) (reversing district court reasoning that an ordinance could be facially constitutional but unconstitutional as applied to adult use not shown to produce secondary effects).

Kismet asserts that a recent Ninth Circuit opinion requires a more exacting analysis to determine whether a local government reasonably relied on an adult-use study. *See Alameda Books, Inc. v. City of Los Angeles,* 222 F.3d 719, 724 (9th Cir. 2000) (1977 study finding that concentration of adult uses causes secondary effects does not justify ordinance prohibiting multiple adult uses in one building). We conclude, however, that *Mitchell* and *ILQ* demonstrate a better application of *Renton's* holding that a local government may rely on studies from other localities if the studies are "reasonably believed to be relevant to the problem that the [locality] addresses." *Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931.

The last constitutional hurdle is whether Ordinance 242 leaves reasonable alternative avenues of communication for adult uses. The district court's determination of the number of sites available for adult uses is a factual finding reviewed only for clear error. *David Vincent, Inc. v. Broward County,* 200 F.3d 1325, 1333 (11th Cir.2000). But the court's methodology for determining the number of sites and its conclusion about whether that number of sites provides reasonable alternative avenues of communication are issues of law that we review de novo. *Id.* at 1333, 1335. We also review de novo the court's construction of Ordinance 242. *See Rowell,* 446 N.W.2d at 920.

We see no error in the court's construction of Ordinance 242's requirement that

adult uses and protected uses must be separated by 500 feet. The district court confirmed Benton County's method of measuring from building to building because the ordinance defined most adult uses and most protected uses in terms of the buildings they occupy. *See* Development Code, *supra*, §§ 7.10.1, 7.10.2. When adult uses are not in a building, however, the 500 feet is measured from the adult use. And when the protected use is residentially zoned property, the measurement is from the lot line of that residential use. We conclude that the court correctly applied the plain language of the ordinance.

Using the county's measurement methods, the district court found that 100 sites were available for adult uses in Benton County. The district court's finding was not clearly erroneous. The court reasonably credited the testimony of Benton County development director Ron Peterson, who conducted the measurements for the county, and rejected the testimony of King's expert, who used all lot-line-to-lot-line measurements. Kismet argues that the development code's discretionary parking requirements render all of the sites unavailable, but we find this argument unpersuasive. Nothing in the county's parking requirements impinges on Kismet's ability to use any of the 100 sites for an adult use. The parking requirements may limit the amount of land on which Kismet may build, but the First Amendment does not guarantee Kismet a certain size piece of land or building for its adult use. *See Broward*, 200 F.3d at 1336 ("making due with less space than one desired" is impediment to relocation of adult use that is not of constitutional magnitude).

We also reject Kismet's argument that the parking requirements constitute a prior restraint unconstitutional under the First Amendment. Zoning provisions that allow adult uses only at the unfettered discretion of a locality violate the First Amendment. *See, e.g., Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361–62 (11th Cir.1999) (finding that requirement that adult uses apply for discretionary zoning exceptions precluded reasonable alternative avenues of communications), *cert. denied,* —— U.S ——, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000). But the Benton County parking requirements do not give county officials discretion to deny Kismet's ability to operate an adult use in Benton County and thus are distinguishable from prior restraints that have been fatal to adult-use ordinances. *See Young v. City of Simi Valley*, 216 F.3d 807, 823 (9th Cir. 2000) (involving adult use that could not operate if private parties vetoed it); *Lady J.*, 176 F.3d at 1361 (involving adult use that could not operate without zoning exception); *Bukaka*, 852 F.Supp. at 812 (involving adult use that could not operate without conditional-use permit). Simply put, nothing in the development code requires Kismet to apply for a permit or license to operate as an adult use. Absent these circumstances, we do not find a prior restraint within the meaning of the First Amendment. *Cf. Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992) (holding that ordinance requiring permit and fee for public speeches, parades, or assemblies was prior restraint on speech); *Stokes v. City of Madison*, 930 F.2d 1163, 1168 (7th Cir.1991) (prior restraint exists when regulation gives officials power to deny use of a forum in advance of actual expression).

The touchstone of *Renton*'s requirement of alternative avenues of communication is that adult uses should not be denied a reasonable opportunity to operate within the locality. *DI MA Corp.*, 562 N.W.2d at 321 (citing *Renton*, 475 U.S. at 54, 106 S.Ct. at 932). We conclude that the 100 available sites provide ample opportunity for adult uses to operate in Benton County and thus provide reasonable alternative avenues of communication. *Cf. DI MA Corp.*, 562 N.W.2d at 322 (finding 15 alternative sites sufficient).

## DECISION

The Benton County Board of Adjustment reasonably denied Kismet's variance application, and we affirm that denial. Because we conclude that Ordinance 242 is content neutral, designed to promote a substantial government interest, and leaves reasonable alternative avenues of communication for adult uses, we also affirm the district court's summary judgment determining that the ordinance is constitutional.

**Affirmed.**