# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3987

_____

Stephen Danforth,                                   *
                                                    *
            Petitioner - Appellant,                 *
                                                    *   Appeal from the United States
      v.                                            *   District Court for the District
                                                    *   of Minnesota.
David Crist; Minnesota Department of                *
Corrections,                                        *
                                                    *
            Respondents - Appellees.                *

_____

Submitted: October 18, 2010
Filed:  October 25, 2010

_____

Before RILEY, Chief Judge, BYE and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Stephen Danforth was convicted of first-degree criminal sexual conduct on
March 16, 1996, and is currently serving a 316-month term of imprisonment. After
several unsuccessful appeals and requests for postconviction relief in the Minnesota
courts, Danforth sought habeas relief in federal district court. The district court[1]
denied Danforth's petition for writ of habeas corpus. Danforth sought to appeal the

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District
of Minnesota, adopting the report and recommendations of the Honorable Raymond
L. Erickson, United States Magistrate Judge for the District of Minneosta.

denial of his petition and the district court granted a certificate of appealability solely on the issue of whether Crawford v. Washington, 541 U.S. 36 (2004) applies retroactively. We granted a motion by Danforth to expand the certificate of appealability to include additional issues regarding the trial court's admission of a videotaped hearsay statement by the victim, who did not testify at trial. We affirm.

I

Stephen Danforth was charged with first-degree criminal sexual conduct involving a six-year-old boy, J.S. The facts of this case are set forth at length in State v. Danforth, 573 N.W.2d 369, 372 (Minn. Ct. App. 1997), and are repeated herein only to the extent they are relevant. The trial court found J.S. incompetent to testify at trial, but admitted into evidence a videotaped interview of J.S. conducted at a child advocacy center, finding the videotape bore sufficient indicia of reliability in accordance with Minnesota Statutes § 595.02, subdivision 3 (1994). The jury found Danforth guilty of first-degree criminal sexual conduct.

After his conviction, Danforth appealed to the Minnesota Court of Appeals, which affirmed his conviction but remanded for resentencing because the trial court failed to impose a double departure required for patterned sex offenders. Danforth, 573 N.W.2d at 371. On remand, Danforth was sentenced to a 316-month term of imprisonment. On appeal, this sentence was affirmed. State v. Danforth, No. C5-98-2054, 1999 WL 262143, at *1 (Minn. Ct. App. May 4, 1999). Danforth then filed a petition for postconviction relief, asserting numerous new as well as previously-raised claims, which was denied. The Minnesota Court of Appeals affirmed. Danforth v. State, No. C6-00-699, 2000 WL 1780244, at *1 (Minn. Ct. App. Dec. 5, 2000).

Several years later, the United States Supreme Court in Crawford ruled defendants have a right under the Sixth Amendment's Confrontation Clause to cross-examine testimonial witnesses. See Crawford, 541 U.S. at 68-69. Crawford replaced

the reliability standard from <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), which was applied in this case. Danforth filed a second petition for postconviction relief alleging he was entitled to relief based on the rule established in <u>Crawford</u>. The Minnesota Court of Appeals affirmed his conviction holding <u>Crawford</u> did not apply retroactively. <u>Danforth v. State</u>, 700 N.W.2d 530, 532 (Minn. Ct. App. 2005). The Minnesota Supreme Court granted review on the <u>Crawford</u> issue and affirmed, holding that under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), <u>Crawford</u> does not apply retroactively. <u>Danforth v. State</u>, 718 N.W.2d 451, 454-55 (Minn. 2006). A subsequent appeal to the United States Supreme Court reversed the Minnesota Supreme Court, noting the <u>Teague</u> standard regarding retroactivity was not binding on state courts, and remanded so the Minnesota Supreme Court could choose its own standard for deciding whether new rules of federal constitutional criminal procedure are retroactive. <u>Danforth v. Minnesota</u>, 552 U.S. 264, 266 (2008). On remand, the Minnesota Supreme Court chose to adopt the <u>Teague</u> standard, held <u>Crawford</u> did not apply retroactively, and again affirmed Danforth's conviction. <u>Danforth v. State</u>, 761 N.W.2d 493, 499 (Minn. 2009).

While those state-court proceedings were underway, Danforth also filed a petition for writ of habeas corpus in the district court. The petition was denied and Danforth appealed. A certificate of appealability was granted by the district court on August 26, 2005, on the sole issue of whether <u>Crawford</u> applies retroactively to cases on collateral review. A certificate of appealability was denied as to all the other issues raised in the petition. On June 5, 2007, we held Danforth's habeas proceedings in abeyance pending the Supreme Court decision in <u>Danforth v. Minnesota</u>. On July 15, 2009, Danforth's motion to continue the stay was denied, and on October 1, 2009, Danforth's certificate of appealability was expanded to include two additional issues. As a result, the following issues are now before us for consideration: (1) whether <u>Crawford</u> should be applied retroactively to Danforth's case; (2) whether the state trial court unreasonably interpreted pre-<u>Crawford</u> law regarding the admissibility of videotaped testimony; and (3) whether the videotaped statement possessed the

-3-

requisite particularized guarantees of trustworthiness under Idaho v. Wright, 497 U.S. 805 (1990).

## II

"In an appeal of a habeas petition, [w]e review the district court's findings of fact for clear error and its conclusions of law de novo." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (internal quotation marks and citation omitted). For habeas relief under 28 U.S.C. § 2254, an applicant must demonstrate the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

A

First, Danforth contends the admission of J.S.'s videotaped statement violated his Confrontation Clause rights in light of the Supreme Court's decision in Crawford v. Washington. According to Danforth, this court should retroactively apply Crawford to conclude J.S.'s statement was inadmissible because Danforth never had the opportunity to cross examine J.S. As Danforth concedes, however, the Crawford opinion was rendered after his case was final on direct review. Whether a new rule announced by the Supreme Court should apply retroactively to judgments in criminal cases that are already final on direct review is governed by Teague v. Lane, which holds new rules of constitutional law are not made retroactive to habeas petitions unless they "place[ ] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or set forth "watershed rules of criminal procedure." 489 U.S. at 311 (internal quotation marks omitted).

There is no Eighth Circuit precedent addressing the issue of Crawford's retroactivity. However, we have commented in dicta that "the Crawford Court did not suggest that this doctrine would apply retroactively and the doctrine itself does not appear to fall within either of the two narrow exceptions to Teague v. Lane's non-retroactivity doctrine." Evans v. Luebbers, 371 F.3d 438, 444 (8th Cir. 2004). Several other circuits have reached this issue and declined to apply Crawford retroactively. See, e.g., Lave v. Dretke, 444 F.3d 333 (5th Cir. 2006); Espy v. Massac, 443 F.3d 1362 (11th Cir. 2006); Bintz v. Bertrand, 403 F.3d 859 (7th Cir. 2005); Dorchy v. Jones, 398 F.3d 783 (6th Cir. 2005); Mungo v. Duncan, 393 F.3d 327 (2d Cir. 2004); Brown v. Uphoff, 381 F.3d 1219 (10th Cir. 2004). The Ninth Circuit is the only circuit to conclude otherwise. See Bockting v. Bayer, 399 F.3d 1010 (9th Cir. 2005) (holding Crawford applies retroactively).

In Whorton v. Bockting, 549 U.S. 406, 415 (2007), the Supreme Court granted certiorari to resolve the conflict between the decision of the Ninth Circuit and "the

decision of every other Court of Appeals and State Supreme Court that has addressed this issue." The Court held <u>Crawford</u> announced a new rule of criminal procedure and this new rule does not fall within the <u>Teague</u> exception for watershed rules. <u>Whorton</u>, 549 U.S. at 421. Therefore, the Supreme Court reversed the decision of the Ninth Circuit and established that <u>Crawford</u> does not apply retroactively. Thus, in accordance with <u>Whorton</u>, we must reject Danforth's claim that <u>Crawford</u> applies retroactively.

Danforth, relying on our decision in <u>Bobadilla v. Carlson</u>, 575 F.3d 785 (8th Cir. 2009), argues law and justice require the application of <u>Crawford</u> to his case. We find this argument unpersuasive. <u>Bobadilla</u> is distinguishable from the present case in that it was still pending when <u>Crawford</u> was decided. Therefore, <u>Bobadilla</u>, unlike the present case, was not subject to the <u>Teague</u> standard limiting the retroactive application of <u>Crawford</u>'s new rule and the petitioner in <u>Bobadilla</u> was entitled to habeas relief as a result of the state court unreasonably applying <u>Crawford</u>. Because the present case is subject to the <u>Teague</u> standard, we conclude Danforth is not entitled to relief under <u>Crawford</u>.

B

Danforth next challenges whether the trial court unreasonably interpreted pre-<u>Crawford</u> law regarding the admissibility of J.S.'s videotaped statement. According to Danforth, Minnesota Statutes § 595.02 essentially created a "<u>per se</u> rule for admissibility of videotaped testimony of alleged child victims in criminal sexual conduct cases" in contradiction to clearly established Supreme Court precedents in <u>Coy v. Iowa</u>, 487 U.S. 1012 (1988), and <u>Lilly v. Virginia</u>, 527 U.S. 116 (1999), which, according to Danforth, establish a right for a defendant to be present at an interview that is to be used at trial.

Danforth's first assertion—that the trial court treated videotaped testimony as per se admissible under Minnesota Statutes § 595.02—is inconsistent with the record. As noted by the Minnesota Court of Appeals, the trial court admitted the videotaped statement in accordance with section 595.02, subdivision 3, but also determined whether the statement bore "'particularized guarantees of trustworthiness'" as required under Idaho v. Wright, 497 U.S. 805, 820 (1990). Danforth, 573 N.W.2d at 375.

Before Crawford, incriminating hearsay statements by an unavailable witness were admissible so long as the statement "bears adequate 'indicia of reliability.'" Roberts, 448 U.S. at 66. The "indicia of reliability" requirement could be met in either of two circumstances: where the statement falls within a firmly rooted hearsay exception or where it is supported by "a showing of particularized guarantees of trustworthiness." Id. As expanded upon in Wright, "'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances . . . [but must] include only those [circumstances] that surround the making of the statement and that render the declarant particularly worthy of belief." 497 U.S. at 819. Factors relating to the trustworthiness of statements made by child witnesses in sexual abuse cases include spontaneity, consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motivation to fabricate. Id. at 821-22. The Court noted these factors were not exclusive, declined to endorse a mechanical test, and emphasized that any test which was used should be designed to determine "whether the child declarant was particularly likely to be telling the truth when the statement was made." Id. at 822.

In determining whether J.S.'s videotaped statement was admissible, the trial court, and subsequently the Minnesota Court of Appeals, considered these factors and found J.S.'s statement bore particularized guarantees of trustworthiness, making it sufficiently reliable to be admitted. The trial court found J.S.'s statement had a degree of spontaneity, involved a limited use of leading or suggestive questions, and there

was an absence of motivation to fabricate on the part of the child. As noted by the Minnesota Court of Appeals,

> Given J.S.'s strong and substantially consistent statements regarding the abuse, his attention-deficit problems (which render him relatively impervious to suggestion and coaching), his apparent lack of motive to fabricate an allegation harming an avuncular figure, and the professionalism of the CornerHouse interview, we agree with the district court that the videotape was sufficiently reliable to be admitted into evidence.

Danforth, 573 N.W.2d at 375. In adjudicating Danforth's case, the trial court did not apply a per se rule of admissibility for videotaped statements in contradiction to federal law. We instead conclude it reasonably applied clearly established federal law regarding the admissibility of such statements, including Roberts and Wright.

Danforth's further contention that the trial court's admission of the videotaped statement contradicted federal law establishing a right to be present at the statement is also without merit. The cases upon which Danforth relies do not establish such a right. In Coy v. Iowa, the Supreme Court held that a screen placed between the child-witness and defendant during in-court testimony violated a defendant's Confrontation Clause rights. 487 U.S. at 1020. As subsequently noted by the Supreme Court, Coy "involved only the question of what in-court procedures are constitutionally required" and does not speak to "what requirements the Confrontation Clause imposes as a predicate for the introduction of out-of-court declarations." White v. Illinois, 502 U.S. 346, 358 (1992). The other case on which Danforth relies, Lilly v. Virginia, 527 U.S. at 126-137, is similarly off-point. In that case, the Supreme Court addressed the issue of whether a statement against penal interest by an accomplice falls within a firmly rooted hearsay exception so as to satisfy Confrontation Clause concerns. It did not address whether a defendant had a right to be present at the time a hearsay statement was made. Therefore, we conclude Danforth cannot show he is entitled to relief on

this claim because he cannot show a clearly established right to be present when a videotaped statement is made under federal law.

C

Lastly, Danforth contends the trial court made an unreasonable determination of the facts when it found the videotaped statement possessed the requisite particularized guarantees of trustworthiness under Wright. Because Danforth's challenge is to the state court's adjudication of the facts, he bears the high burden of overcoming a presumption that the trial court's findings of facts are correct, which can only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Hall, 341 F.3d at 713.

To meet his burden, Danforth relies exclusively on the trial court's conclusion that J.S. was incompetent to testify. According to Danforth, that finding "is in direct contradiction to the finding that the videotaped testimony of the complaining witness is trustworthy." We find this argument unpersuasive. The trial court explained that its finding of incompetence was based on J.S.'s limited ability to focus on questions and give relevant answers, noting "J.S. had an ability to know and remember the truth, but . . . was not capable of paying attention long enough to communicate meaningfully to the jury in a trial setting." The finding of incompetence does not clearly and convincingly prove J.S.'s videotaped statement lacked trustworthiness, particularly in light of the totality of all the surrounding circumstances. We conclude the trial court did not make an unreasonable determination of the facts in finding J.S.'s statement reliable despite its finding that J.S. was incompetent to testify at trial.

III

Accordingly, we affirm.

_____

-9-