**In re CIVIL COMMITMENT OF Peter Gerard LONERGAN,**

and

**In re Civil Commitment of Robert Archie Kunshier.**

Nos. A10–1269, A10–1270.

Supreme Court of Minnesota.

April 11, 2012.

---

Lori Swanson, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, John L. Kirwin, Special Assistant County Attorney, Deborah E. Schmidt, Assistant County Attorney, Minneapolis, MN, Karen L. Henke, Assistant County Attorney, Hastings, MN, for respondent.

Kurt M. Anderson, Minneapolis, MN, for appellants.

## OPINION

ANDERSON, PAUL H., Justice.

Peter Gerard Lonergan and Robert Archie Kunshier are both indeterminately civilly committed to the Minnesota Sex Offender Program. Lonergan and Kunshier each sought relief from his commitment by filing a pro se motion in Dakota County District Court under Minn. R. Civ. P. 60.02. After the district court denied the motions, both Lonergan and Kunshier appealed. The Minnesota Court of Appeals affirmed the denial of Lonergan's motion. The court held that as a Sexually Dangerous Person, Lonergan could not use Rule 60.02 to seek a discharge from his indeterminate commitment or to make a constitutional challenge to the adequacy of his treatment at the Minnesota Sex Offender Program. The court reached its holding, in part, by concluding that Rule 60.02 conflicts with the Minnesota Commitment and Treatment Act, Minn.Stat. ch. 253B (2010). The court also affirmed the denial of Kunshier's motion in a separate opinion, citing its decision in *In re Civil Commitment of Lonergan*, 792 N.W.2d 473 (Minn.App.2011), to mean that Rule 60.02 may not be used to seek any relief from an indeterminate civil commitment order. Lonergan and Kunshier appealed to our court arguing, among other things, that their commitments are unconstitutional. We reverse in part and remand.

*Peter Gerard Lonergan*

On May 14, 2009, the Dakota County District Court indeterminately civilly committed Peter Gerard Lonergan to the Minnesota Sex Offender Program (MSOP) as a Sexually Dangerous Person (SDP) under the Minnesota Commitment and Treatment Act (Commitment Act). Minn. Stat. ch. 253B (2010). Approximately 1 year later, on May 27, 2010, Lonergan filed a pro se motion seeking relief from the district court's judgment under Minn. R. Civ. P. 60.02(d)–(f). Lonergan asked the court to either (1) dismiss his commitment as void, or (2) order his placement in a "viable accredited program which offers meaningful sex offender treatment."

Lonergan claimed that, despite MSOP's mandate to provide proper care and treatment, he was not receiving any sex-offender-specific treatment. *See* Minn.Stat. § 253B.03, subd. 7. Accordingly, Lonergan argued that MSOP (1) breached its treatment contract with him; (2) failed to meet its statutory obligation to provide "proper care and treatment" under the Commitment Act, Minn.Stat. § 253B.03, subd. 7; (3) committed fraud upon the court; (4) unlawfully detained him for profit; (5) exacerbated the punitive nature of the program; and (6) failed to confine him for the purpose of treatment—the "original reason[ ] for commitment"—which is constitutionally required. Lonergan also argued that because MSOP has inadequate treatment resources and lacks accreditation, its "treatment is a sham." Finally, Lonergan argued that he had not manifested either a mental illness or a severe personality disorder while at MSOP.

On July 7, 2010, the Dakota County District Court denied Lonergan's motion. *In re Civil Commitment of Lonergan,* No. 19–P1–06–8179, Order at 2 (Dakota Cnty. Dist. Ct. filed July 7, 2010). Without appearances or a response from Dakota County, the court found that none of the provisions of Minn. R. Civ. P. 60.02 advanced by Lonergan provided proper grounds for relief. *Id.* Lonergan filed a pro se appeal to the court of appeals.

On January 4, 2011, the court of appeals held that Lonergan could not use Rule 60.02 to seek a discharge from his indeterminate commitment as an SDP or to challenge the adequacy of MSOP's treatment. *In re Civil Commitment of Lonergan,* 792 N.W.2d 473, 476–77 (Minn.App.2011). The court reached this holding by concluding that "the statutory framework governing commitment as an SDP does not authorize a constitutional challenge to a commitment order or a challenge to the adequacy of . . . treatment" because the Commitment Act itself prohibits such a challenge and thus the statute conflicts with Rule 60.02. *Id.* at 474. The court determined that the conflict between the Commitment Act and Rule 60.02 renders the rule unavailable to Lonergan under Appendix A of the Minnesota Rules of Civil Procedure. *Id.* at 476–77; *see* Minn. R. Civ. P.App. A (excepting from the Minnesota Rules of Civil Procedure a list of statutes "insofar as [the statutes] are inconsistent or in conflict

with the procedure and practice provided by these rules"). Lonergan petitioned our court for review.

### *Robert Archie Kunshier*

On April 4, 1994, the Dakota County District Court indeterminately civilly committed Robert Archie Kunshier as a Sexual Psychopathic Personality (SPP).[1] *In re Welfare of Kunshier,* No. P5–88–1302, Order at 14 (Dakota Cnty. Dist. Ct. filed Apr. 14, 1994). On December 3, 2009, Kunshier filed a pro se motion in district court seeking relief from the court's judgment under Minn. R. Civ. P. 60.02(f). Kunshier argued that the following circumstances denied him state and federal constitutional rights: (1) he had been improperly labeled a Level 3 sex offender instead of a Level 2 offender and had no way to correct the improper assignment; (2) he had no way to gain release from MSOP even though he successfully completed sex-offender treatment; (3) he was being forced to complete a new sex-offender treatment program without clear and convincing evidence that the first treatment program he completed was unsuccessful; (4) MSOP had not released a single patient and would not release any patients under an executive order by then-Governor Tim Pawlenty;[2] and (5) he received ineffective assistance of counsel during his commitment proceedings.

On May 25, 2010, the district court denied Kunshier's motion. *In re Civil Com-*

---

**1.** The Legislature enacted the SDP and SPP provisions in 1994. The SPP provisions replaced the Psychopathic Personality provisions and renamed Psychopathic Personalities as SPPs. Act of Aug. 31, 1994, 1st Spec. Sess., ch. 1, art. 1, §§ 2, 4–6, 1995 Minn. Laws 5, 6–9. The Legislature expressly stated that it did not intend the SPP provisions to make any substantive change to the Psychopathic Personality provisions. *Id.* § 5, 1995 Minn. Laws 5, 8. Accordingly, even though Kunshier was committed as a Psychopathic Personality and not as an SPP, the SPP provisions govern his

claims and for clarity we refer to Kunshier as an SPP.

**2.** Executive Order No. 03–10 directs "[s]tate agencies [to] ensure that no person who has been civilly committed under Minnesota law as a sexually dangerous person or as a person with a sexual psychopathic personality [be] discharged into the community unless required by law or ordered by a court of competent jurisdiction." Exec. Order No. 03–10, 28 State Reg. 57, 57 (July 10, 2003).

*mitment of Kunshier*, No. 19–P5–88–1302, Order at 1 (Dakota Cnty. Dist. Ct. filed May 25, 2010). The court concluded that Kunshier's Minn. R. Civ. P. 60.02 motion was improper because Kunshier's commitment is governed by the Commitment Act, Minn.Stat. §§ 253B.18, subd. 3, 253B.185, which requires that persons committed as SDPs and SPPs petition a Special Review Board—not the district court—for a reduction in custody. *In re Civil Commitment of Kunshier*, No. 19–P5–88–1302, Order at 3. The court also concluded that Kunshier did not meet the "exceptional circumstances" required to invoke Rule 60.02(f) and that Rule 60.02(f) did not apply to mistakes of fact or to ineffective assistance of counsel claims. *Id.* at 4–5. Finally, the court concluded Kunshier's motion was untimely under Rule 60.02, which requires that a motion be brought within a "reasonable time." *Id.* at 5–6. Kunshier filed a pro se appeal to the court of appeals.

On February 15, 2011, the court of appeals affirmed the district court. *In re Civil Commitment of Kunshier*, No. A10–1270, 2011 WL 500070 (Minn.App. Feb. 15, 2011). The court cited its *Lonergan* decision, stating, "[W]e recently held [in *Lonergan*] that [Minn. R. Civ. P. 60.02] is not the mechanism for relief from an indeterminate civil commitment order." *Id.* at *2. Instead, the court concluded that Kunshier must rely on the statutory provisions in the Commitment Act to challenge his commitment. *Id.* Kunshier, like Lonergan, petitioned our court for review. We granted review in both cases on the question whether an SDP or SPP may bring a motion under Minn. R. Civ. P. 60.02 before the committing court, and consolidated Kunshier's case with Lonergan's case.

## I.

Whether a patient indeterminately committed as an SDP or SPP may file a motion under Minn. R. Civ. P. 60.02 seeking relief from a judgment of indeterminate civil commitment depends on whether the Commitment Act conflicts with or is inconsistent with Rule 60.02. Rule 81.01(a) of the Minnesota Rules of Civil Procedure states that "[the rules of civil procedure] do not govern pleadings, practice and procedure in the statutory and other proceedings listed in Appendix A *insofar as they are inconsistent or in conflict with the rules.*" (Emphasis added.) Appendix A provides the list of statutes subject to Rule 81.01, which includes the Commitment Act. Minn. R. Civ. P.App. A. Thus, we must determine to what extent, if any, the Commitment Act conflicts with or is inconsistent with Rule 60.02.

■ Determining whether the Commitment Act conflicts with or is inconsistent with Rule 60.02 requires interpretation of the Commitment Act. Interpretation of a statute is a legal question that we review de novo. *Hince v. O'Keefe*, 632 N.W.2d 577, 582 (Minn.2001). A brief examination of the relevant provisions of the Commitment Act will help to answer the question whether the Act conflicts with or is inconsistent with Rule 60.02.

### Commitment Act

The Commitment Act centers on six categories of persons who may be civilly committed: those who are (1) chemically dependent, (2) mentally ill, (3) developmentally disabled, (4) mentally ill and dangerous to the public (MID), (5) an SPP, or (6) an SDP. Minn.Stat. § 253B.02. A patient committed under one of the first three categories may petition the committing court for release under Minn.Stat. § 253B.17, subd. 1. But the same subdivision explicitly denies that right to patients indeterminately committed under one of the last three categories:

Any patient, *except one committed as a person who is mentally ill and dangerous to the public or as a sexually dangerous person or person with a sexual psychopathic personality as provided in section 253B.18, subdivision 3,* or any interested person may petition the committing court or the court to which venue has been transferred for an order that the patient is not in need of continued care and treatment or for an order that an individual is no longer a person who is mentally ill, developmentally disabled, or chemically dependent, or for any other relief.

Minn.Stat. § 253B.17, subd. 1 (emphasis added).

Instead of petitioning the committing court for release, a patient indeterminately committed as an SDP or SPP must follow certain other statutory procedures. These procedures specifically allow a patient committed as an SDP or SPP to seek a "reduction in custody." Minn.Stat. § 253B.185, subd. 9. The Commitment Act defines a "reduction in custody" as a "transfer out of a secure treatment facility, a provisional discharge, or a discharge from commitment." *Id.*, subd. 9(b)(2). To seek a transfer or discharge, a patient indeterminately committed as an SDP or SPP must petition a three-member Special Review Board (Board).[3] *Id.*, subd. 9(c). The Board then conducts a hearing and issues a recommendation to a three-member Judicial Appeal Panel (Panel).[4] *Id.*, subd. 9(f). A patient committed as an SDP or SPP may petition the Panel for a

rehearing or for reconsideration of the Board's recommendation. Minn.Stat. § 253B.19, subd. 2(b). The Panel then issues an order either adopting the Board's recommendation or setting the matter for a hearing. *Id.* A patient committed as an SDP or SPP may appeal the Panel's order to the Minnesota Court of Appeals. *Id.*, subd. 5.

The Commitment Act also provides that a patient indeterminately committed as an SDP or SPP may not be discharged unless:

it appears to the satisfaction of the judicial appeal panel, after a hearing and recommendation by a majority of the special review board, that the patient is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision.

In determining whether a discharge shall be recommended, the special review board and judicial appeal panel shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community. If the desired conditions do not exist, the discharge shall not be granted.[5]

Minn.Stat. § 253B.185, subd. 18. Finally, while the committing court maintains jurisdiction over patients committed as chemically dependent, mentally ill, and developmentally disabled, *see* Minn.Stat. § 253B.12, the committing court generally

---

**3.** The Board consists of three members "experienced in the field of mental illness," including one attorney and one psychiatrist. Minn.Stat. § 253B.18, subd. 4c. Patients generally may petition the Board every 6 months. Minn.Stat. § 253B.185, subd. 9(c).

**4.** The Panel consists of "three judges and four alternate judges appointed from among the

acting judges of the state. Panel members shall serve for terms of one year each. Only three judges need hear any case." Minn.Stat. § 253B.19, subd. 1.

**5.** Similar restrictions are placed on the granting of a provisional discharge and a transfer. *See* Minn.Stat. § 253B.185, subds. 11, 12.

does not remain involved in the continuing commitment of a patient indeterminately committed as an MID, an SDP, or an SPP.

*Commitment Act and Rule 60.02*

With the foregoing statutory scheme in mind, we turn to the question of whether under Minn. R. Civ. P. 81.01(a), the Commitment Act conflicts with or is inconsistent with Minn. R. Civ. P. 60.02. *See* Minn. R. Civ. P. 81.01(a); Minn. R. Civ. P.App. A. We have said that "in the absence of a clear intention to the contrary ... the ordinary rules of civil procedure apply [to a claim] unless clearly inconsistent with the statute." *Thunderbird Motel Corp. v. Cnty. of Hennepin,* 289 Minn. 239, 242, 183 N.W.2d 569, 571 (1971). Generally, in "cases in which we have interpreted Rule 81.01 and found a rule of civil procedure to be inconsistent with a statute," we have determined that "the conflict appeared distinctly." *Guillaume & Assoc. v. Don–John Co.,* 336 N.W.2d 262, 263 (Minn. 1983); *see also Tischendorf v. Tischendorf,* 321 N.W.2d 405, 409 n. 2 (Minn.1982).

■■■ We have stated that if a "distinct conflict" exists between a statute and a rule, the provisions are inconsistent and this "inconsistency renders the rule inapplicable to [the relevant] proceedings under Rule 81.01[ (a) ]." *Tischendorf,* 321 N.W.2d at 409 n. 2. If no distinct conflict exists, we apply the rule—unless the "purpose of the [statute] would be so frustrated by an application of the [rule] that the rule and the statute must be deemed inconsistent." *Guillaume,* 336 N.W.2d at 263; *see also In re Brainerd Nat'l Bank,* 383 N.W.2d 284, 286 (Minn.1986). Therefore, under our case law, to the extent that the Commitment Act and Rule 60.02 present a distinct conflict, Lonergan and Kunshier must seek relief under the procedures set out in the Commitment Act, not Rule 60.02. *See Tischendorf,* 321 N.W.2d at 409 n. 2. Further, even in the absence of a distinct conflict, Lonergan and Kunshier must follow the procedures set out in the Commitment Act if application of Rule 60.02 would frustrate the purpose of the Commitment Act. *See Guillaume,* 336 N.W.2d at 263.

Rule 60.02 allows a court to "relieve a party or the party's legal representatives from a final judgment[,] ... order, or proceeding" on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial pursuant to Rule 59.03;

(c) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

(e) The judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(f) Any other reason justifying relief from the operation of the judgment.

Minn. R. Civ. P. 60.02. Motions brought under Rule 60.02(a)–(c) must be brought within one year of the judgment, order, or proceeding being challenged. *Id.* In contrast, motions brought under Rule 60.02(d)–(f) shall be brought within a "reasonable time." *Id.* In essence, Rule 60.02 allows a court to grant a party relief from judgment if that party files a timely motion under the rule and properly invokes one of the grounds warranting relief.

■■ The scope of relief under the Commitment Act is narrower than it is under Rule 60.02. The Commitment Act only provides relief to a patient indeterminately

committed as an SDP or SPP through a transfer or a discharge. Minn.Stat. § 253B.185, subds. 1(e), 9. Moreover, the Commitment Act is the "exclusive remedy" for patients committed as SDPs and SPPs seeking a transfer or discharge. *See K.B.C. v. Cnty. of Itasca,* 308 N.W.2d 495, 497–98 (Minn.1981) (analyzing an older, but relevant, version of the statute). The Commitment Act expressly states that patients indeterminately committed "shall be transferred, provisionally discharged or discharged, *only as provided in this section.*" Minn.Stat. § 253B.185, subd. 1(e) (emphasis added); *see also id.,* subd. 9. Therefore, when seeking a transfer or discharge, it appears that a patient committed as an SDP or SPP must exclusively follow the Commitment Act's specific procedures for petitioning for a transfer or discharge.

Accordingly, any other procedure through which a patient indeterminately committed as an SDP or SPP seeks a transfer or discharge distinctly conflicts with the Commitment Act. This conflict would unquestionably include the procedures provided in Rule 60.02 to the extent those procedures apply to a transfer or discharge. Because Rule 60.02 distinctly conflicts with the Commitment Act in those circumstances, Rule 60.02 does "not govern [those] pleadings, practice [or] procedure[s]." Minn. R. Civ. P. 81.01(a). Therefore, we conclude that neither Lonergan nor Kunshier may use Rule 60.02 to seek a transfer or discharge.

But the Commitment Act does not provide any procedures for a patient indeterminately committed as an SDP or SPP to raise nontransfer, nondischarge claims such as ineffective assistance of counsel and lack of subject matter jurisdiction. *See* Minn.Stat. §§ 253B.18–.185. Thus, unlike when a patient brings a Rule 60.02 motion seeking a transfer or discharge, the Rule does not distinctly conflict with the Commitment Act when a patient committed as an SDP or SPP brings a Rule 60.02 motion based on a nontransfer, nondischarge claim. *See Ryan Contracting, Inc. v. JAG Invs., Inc.,* 634 N.W.2d 176, 186 n. 11 (Minn.2001) (explaining that where a rule simply fills a gap or a silence in a statute, the rule may govern), *overruled on other grounds by Mavco, Inc. v. Eggink,* 739 N.W.2d 148 (Minn.2007). When viewed in this context, application of Rule 60.02 does not frustrate the purpose of the Commitment Act. *See Guillaume,* 336 N.W.2d at 263–64.

■ · We have said that the purpose of the Commitment Act is twofold: (1) protection of the public, and (2) rehabilitation of the patient. *In re Civil Commitment of Johnson,* 800 N.W.2d 134, 147 (Minn.2011). We have explained:

> Minnesota's interest in enacting civil commitment laws lies "in both protecting the public from sexual violence and rehabilitating the mentally ill." These state interests are "compelling." These interests are directly served through the civil commitment statute because, under Minn.Stat. § 253B.02, subd. 18c(3), the determination as a "sexually dangerous person" specifically requires findings that the person is likely to reoffend and harm the public.

*Id.* (quoting *In re Linehan,* 594 N.W.2d 867, 872 (Minn.1999)) (other citations omitted). Given this mandate, application of Rule 60.02 must not frustrate either the rehabilitation of patients indeterminately committed as SDPs and SPPs, or the protection of the public. A Rule 60.02 motion requesting transfer may frustrate an SDP or SPP's rehabilitation, and a Rule 60.02 motion requesting discharge may frustrate both the patient's rehabilitation and public safety. But a motion under Rule 60.02 seeking to cure—for example—a procedur-

al or jurisdictional defect during the commitment process, does not necessarily interfere with a patient's rehabilitation or put public safety at risk. Therefore, we conclude that Lonergan and Kunshier may bring a narrow category of Rule 60.02 motions that do not (1) distinctly conflict with the Commitment Act, or (2) frustrate a patient's rehabilitation or the protection of the public.

Based on the foregoing analysis, we conclude that a blanket prohibition on use of Rule 60.02 motions by any patient who is indeterminately civilly committed is improper. Rule 81.01 does not require a wholesale substitution of the Commitment Act for Rule 60.02. Instead, Rule 81.01 requires the Commitment Act to supersede Rule 60.02 only "insofar as" the Commitment Act is "inconsistent or in conflict with [Rule 60.02]." The term "insofar" contemplates that the Commitment Act and Rule 60.02 might be inconsistent only in part, and not in whole. As discussed earlier, the Commitment Act and Rule 60.02 are not wholly inconsistent. Because they are not wholly inconsistent, we conclude that there exists a narrow class of claims that may be brought under Rule 60.02 by a patient indeterminately committed as an SDP or SPP.[6] Examples of these claims might include a commitment void for a lack of jurisdiction, ineffective assistance of counsel, and other limited claims that do not specifically request transfer or discharge. Nevertheless, when a patient committed as an SDP or SPP seeks to vacate a commitment under Rule 60.02 in place of seeking a transfer or discharge under the Commitment Act's procedures, we conclude that Rule 60.02 is unavailable.

For the foregoing reasons, we conclude that the court of appeals erred in *Kunshier* when it articulated a blanket prohibition on use of Rule 60.02 motions by patients indeterminately committed as SDPs or SPPs. *In re Civil Commitment of Kunshier*, No. A10–1270, 2011 WL 500070, at *2. While the court in *Lonergan* did not articulate a blanket prohibition, we nevertheless conclude that Lonergan's claims warrant reconsideration in light of our opinion. Thus, we remand both Lonergan's and Kunshier's cases to the court of appeals to determine what, if any, nontransfer, nondischarge claims Lonergan and Kunshier raise.

Reversed in part and remanded.

---

6. It is worth noting that Dakota County, which argued against Lonergan and Kunshier on appeal, openly acknowledged that there are "likely other claims that could be legitimately brought under Rule 60.02 by a person committed as [an] SPP or SDP." Dakota County further recommended that we remand Kunshier's case for consideration of his ineffective assistance of counsel claim under Rule 60.02.