*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0951**

In the Matter of the Civil Commitment of:
Stephen Danforth, a/k/a Stephen Rabideau

**Filed December 8, 2014
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-MH-PR-13-1092

Roderick N. Hale, Minneapolis, Minnesota (for appellant)

Michael O. Freeman, Hennepin County Attorney, Theresa Couri, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Connolly, Judge; and Reilly,
Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In this appeal from an order of civil commitment, appellant argues that the
commitment statute constitutes an unconstitutional bill of attainder and is
unconstitutional on other grounds under the United States Constitution and the Minnesota
Constitution. He further contends that the district court erred in admitting evidence of the
results of his risk assessment testing, a prior conviction, and his correspondence and

possession of certain print materials while in prison. Because we conclude that appellant's arguments lack merit under federal and Minnesota precedent, we affirm.

## FACTS

In October 2013, a petition was filed to commit appellant Stephen Danforth as a person with a sexual psychopathic personality and a sexually dangerous person, as defined in Minn. Stat. § 253D.02, subds. 15, 16 (Supp. 2013). At the time, Danforth was serving a prison sentence stemming from a 1996 conviction of first-degree criminal sexual conduct and was due for supervised release in April 2014.

Before the commitment hearing, Danforth moved for the exclusion of evidence regarding his clinical and actuarial risk assessment, his 1996 conviction, and his correspondence and possession of certain print materials while he was in prison. Danforth also moved to dismiss the petition on various constitutional grounds, alleging, inter alia, that the commitment statute violated his substantive and procedural due process rights and constituted an illegal bill of attainder. Prior to the commitment hearing, the district court denied Danforth's motion to exclude evidence, but deferred ruling on his motion for dismissal of the petition on constitutional grounds.

The commitment hearing was held on February 24–25, 2014, with court-appointed psychologist, Dr. Paul Reitman, as the sole witness. Dr. Reitman testified that Danforth has numerous convictions for the sexual abuse of young children stretching back to the 1970s and was currently serving a prison sentence for first-degree criminal sexual conduct involving a six-year-old victim. He further testified that, while in prison, Danforth had made attempts to procure books with nudity, had been in contact with a

2

media company that condoned pedophilia, and was found to be in possession of photographs of young boys. Based upon his psychological testing of Danforth, he concluded that Danforth has a high risk of recidivism, especially in light of his repeated refusals to participate in sex offender treatment during his incarceration. On cross-examination, Danforth's counsel challenged Dr. Reitman's opinions regarding Danforth's risk of recidivism as determined by his risk assessment testing, asserting that Danforth's advanced age of 59 years and stale conviction history from more than a decade earlier did not support Dr. Reitman's assessment. Dr. Reitman countered that Danforth's continued preoccupation with the nudity of young boys, as demonstrated by his correspondence seeking books and periodicals with nude boys while in prison, indicated that he was still at a high risk of recidivism, notwithstanding his age and the fact that his convictions were committed more than a decade earlier.

After the commitment hearing, the district court denied Danforth's motion to dismiss the commitment petition on constitutional grounds. Based on Dr. Reitman's testimony and the exhibits in evidence, the district court found by clear and convincing evidence that Danforth satisfied the requirements for commitment as a person with a sexual psychopathic personality under Minn. Stat. § 253D.02, subd. 15, and as a sexually dangerous person under Minn. Stat. § 253D.02, subd. 16. Danforth appeals from the commitment order.

## DECISION

To commit someone as a person with a sexual psychopathic personality, the district court must find: (1) a habitual course of misconduct involving sexual matters; (2)

3

an utter lack of power to control sexual impulses; and (3) dangerousness to others. Minn. Stat. § 253D.02, subd. 15; *In re Linehan (Linehan I)*, 518 N.W.2d 609, 613 (Minn. 1994). An individual may be committed as a sexually dangerous person if the person: (1) has engaged in a course of harmful sexual conduct; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct. Minn. Stat. § 253D.02, subd. 16. After a petition for commitment is filed, the district court holds a hearing at which a court-appointed examiner testifies, other witnesses can be called and cross-examined, and the district court receives any relevant documentary evidence. Minn. Stat. §§ 253D.07, subd. 2 (Supp. 2013), 253B.08 (2012 & Supp. 2013). The district court will commit a person to the secure confinement of the Minnesota Sex Offender Program (MSOP) if it finds clear and convincing evidence that the person has a sexual psychopathic personality or is a sexually dangerous person, unless that person establishes his or her suitability for a less-restrictive treatment program. Minn. Stat. § 253D.07, subd. 3 (Supp. 2013); *see also In re Civil Commitment of Ince*, 847 N.W.2d 13, 25–26 (Minn. 2014).

## I.

Danforth brings a number of constitutional challenges to the commitment statute. We review the constitutionality of a statute de novo. *Rew v. Bergstrom*, 845 N.W.2d 764, 776 (Minn. 2014). "Minnesota statutes are presumed constitutional and . . . our power to declare a statute unconstitutional must be exercised with extreme caution and only when absolutely necessary." *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn. 1999). We will uphold a statute unless the challenger can demonstrate beyond a

4

reasonable doubt that the statue is unconstitutional. *SooHoo v. Johnson*, 731 N.W.2d 815, 821 (Minn. 2007).

Danforth claims that the commitment statute is a bill of attainder in violation of state and federal constitutional law because it inflicts punishment upon a group of individuals identified by virtue of their past conduct.

A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Council of Indep. Tobacco Mfrs. of Am. v. State*, 685 N.W.2d 467, 474 (Minn. App. 2004), *aff'd*, 713 N.W.2d 200 (Minn. 2006). Bills of attainder are unconstitutional under the United States and Minnesota constitutions. U.S. Const. art. I, § 10; Minn. Const. art. I, § 11. Before a statute may be declared unconstitutional as a bill of attainder, it must be shown that (1) the statute singles out or specifies an identifiable individual or group; (2) the purpose of the statute is punishment; and (3) there is no judicial trial necessary for the application of the statute. *Council of Indep. Tobacco Mfrs.*, 685 N.W.2d at 474 (citing *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 847, 104 S. Ct. 3348, 3352 (1984)).

First, Danforth has failed to show that the civil commitment statute singles out or specifies an identifiable individual or group of people. In order to constitute a bill of attainder, the law must designate individuals "by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Selective Serv. Sys.*, 468 U.S. at 847, 104 S. Ct. at 3352 (quotation omitted). In other

5

words, "[a] legislative prohibition is not a bill of attainder if it can be avoided by simply not engaging in the affected conduct." *Council of Indep. Tobacco Mfrs.*, 685 N.W.2d at 475.

Danforth argues that the commitment statute improperly designates him for commitment based upon his past convictions of criminal sexual conduct and that he is therefore unable to avoid application of the statute. But while the definitions of "sexual psychopathic personality" and "sexually dangerous person" in the statute are based in part upon a person's past misconduct, more than just past conduct is required before a person can be found to satisfy these definitions. The statute also requires the commitment court to find *future* dangerousness, coupled with additional factors, and is intended to "'limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control.'" *Ince*, 847 N.W.2d at 23 (quoting *In re Linehan (Linehan IV)*, 594 N.W.2d 867, 873 (Minn. 1999)). A district court is required to evaluate an offender's present circumstances and condition in assessing future dangerousness. *See Linehan IV*, 594 N.W.2d at 876 n.4 (providing that civil commitment requires proof that a person "suffers from a current disorder or dysfunction"). Because the statute requires proof of a current condition and an assessment of future dangerousness, not all sexual offenders or persons with a history of sexual misconduct may be civilly committed under the statute.

Second, Danforth has failed to show that civil commitment as a person with a sexual psychopathic personality or as a sexually dangerous person constitutes "punishment." The Supreme Court has defined "forbidden punishment" in terms of three

6

questions: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a [legislative] intent to punish." *Selective Serv. Sys.*, 468 U.S. at 853, 104 S. Ct. at 3355 (quotation omitted); *see also Council of Indep. Tobacco Mfrs.*, 685 N.W.2d at 474–75. Danforth argues that the commitment statute is punishment under all three tests: it constitutes historical punishment, it does not act to further nonpunitive purposes, and the legislative intent behind its passage was for "unlimited, indefinite, and probably lifetime-duration preventive detention" for sex offenders.

Minnesota courts have consistently held that civil commitment of sex offenders has dual nonpunitive purposes: "(1) protection of the public, and (2) rehabilitation of the patient." *In re Civil Commitment of Lonergan*, 811 N.W.2d 635, 642 (Minn. 2012). "These state interests are 'compelling' . . . [and] are directly served through the civil commitment statute because . . . the determination as a 'sexually dangerous person' specifically requires findings that the person is likely to reoffend and harm the public." *Id.* (quotations omitted). Numerous Minnesota decisions have established that the commitment program is remedial, not punitive, in the context of other constitutional doctrines. *See, e.g.*, *Linehan IV*, 594 N.W.2d at 872–76 (concluding that commitment under the statute requires a finding of volitional impairment and is therefore sufficiently narrowly tailored to satisfy substantive due process standards); *In re Linehan (Linehan III)*, 557 N.W.2d 171, 187–88 (Minn. 1996) (finding a prior version of the commitment

7

statute remedial in the context of an ex post facto law challenge); *Call v. Gomez*, 535 N.W.2d 312, 319–20 (Minn. 1995) (holding that a prior version of the statute was not punitive as was required to sustain a double jeopardy challenge). Danforth's arguments are unpersuasive as to how we should distinguish this case law or how "punishment" is defined more broadly in the context of attainder.

Finally, Danforth has failed to show that the commitment statute lacks a judicial trial. Federal and state case law make clear that the lack of a judicial trial is an element of a bill of attainder. *See Selective Serv. Sys.*, 468 U.S. at 846–47, 104 S. Ct. at 3352; *Council of Indep. Tobacco Mfrs.*, 685 N.W. at 474. The bill-of-attainder doctrine is "grounded in the separation of powers doctrine," and the usurpation by the legislature of the judicial role in making determinations of guilt and punishment is the primary concern of the proscription against bills of attainder. *Council of Indep. Tobacco Mfrs.*, 685 N.W.2d at 474.

Danforth asserts that the absence of judicial trial is a "pseudo-element" of the attainder doctrine, and that the judicial procedure underlying civil commitment is inadequate to save the commitment statute from designation as a bill of attainder. Danforth cites *United States v. Brown*, 381 U.S. 437, 85 S. Ct. 1707 (1965), for the proposition that a jury trial does not inoculate a law from being struck down as a bill of attainder. But unlike the law at issue in *Brown*, where the jury merely needed to determine that the defendant was a member of the Communist Party to find criminal guilt, *id.* at 440, 85 S. Ct. at 1710, the judicial process under the commitment statute requires reasoned findings by the district court after a trial.

Under the commitment statute, there are significant judicial procedures and protections in place that delineate how an individual is civilly committed. *E.g.*, Minn. Stat. §§ 253B.07 (2012 & Supp. 2013) (providing for prepetition screening, petition requirements, right to counsel, right to second examiner of patient's choosing, and a preliminary hearing), .08 (setting out hearing procedure, including right to attend or be absent, and right to call and cross-examine witnesses). The judiciary, not the legislature, is ultimately responsible for determining whether to commit an offender. Minn. Stat. § 253D.07, subd. 3. In light of the judicial process required by the commitment statute, Danforth has failed to show any usurpation of the judicial role by the legislature.

Because Danforth is not able to show beyond a reasonable doubt that the commitment statute meets any of the three required elements, the statute is not unconstitutional as a bill of attainder under the United States or Minnesota Constitutions.

**B.**

Danforth argues that his civil commitment is an unconstitutional deprivation of his substantive due process rights under the Fourteenth Amendment. "[F]reedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.'" *Kansas v. Hendricks*, 521 U.S. 346, 356, 117 S. Ct. 2072, 2079 (1997) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 1785 (1992)). "Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." *Foucha*, 504 U.S. at 79, 112 S. Ct. at 1785. "Whether a confinement scheme is punitive has been the threshold question for some constitutional challenges," including due process challenges.

9

*Seling v. Young*, 531 U.S. 250, 266, 121 S. Ct. 727, 737 (2001) (citing, inter alia, *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095 (1987), which upheld the use of pretrial detention against a due process challenge). In order to satisfy substantive due process, a civil-commitment statute must "couple[] proof of dangerousness with the proof of some additional factor," in order to "limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." *Hendricks*, 521 U.S. at 358, 117 S. Ct. at 2080.

Danforth first argues that the Minnesota commitment statute violates substantive due process "as applied" because it is punitive in nature and "supersedes the primacy of criminal law in Minnesota." But Danforth, who has not or has only recently entered treatment under the MSOP, is appealing from his initial civil-commitment order. Beyond conclusory statements that commitment is "preventive detention" and "incapacitation," he fails to present any specific facts of his pending commitment or treatment or any other aspects of the law that support his "as-applied" challenge. Moreover, to the extent that Danforth is challenging his future treatment in the MSOP without actually having received treatment yet, his claim is not ripe. *See In re Civil Commitment of Travis*, 767 N.W.2d 52, 58 (Minn. App. 2009).

As previously noted, case law has established that the purposes of the commitment statute are treatment and protection of the public, not punishment. *E.g.*, *Lonergan*, 811 N.W.2d at 642; *Linehan III*, 557 N.W.2d at 187–88; *Call*, 535 N.W.2d at 319–20; *see also Hendricks*, 521 U.S. at 361–63, 117 S. Ct. at 2081–83. Moreover, our supreme court has upheld the commitment statute against a substantive due process challenge by

10

holding that the statute is sufficiently narrowly tailored to satisfy substantive due process. *Linehan IV*, 594 N.W.2d at 872–76; *see also In re Blodgett*, 510 N.W.2d 910, 916 (Minn. 1994). By failing to distinguish his constitutional claims from the holdings in those decisions, Danforth's argument is unpersuasive.

Danforth also contends that the district court's reliance on risk assessment evidence violates substantive due process, claiming that such clinical and actuarial testing does not reliably predict future behavior. However, the use of such evidence at civil commitment proceedings has been deemed "relevant" when determining whether commitment is needed. *Ince*, 847 N.W.2d at 24. District courts are required to evaluate several factors in assessing future dangerousness, including the person's history with sex therapy programs as well as demographic statistics and "base rate statistics for violent behavior among individuals of the person's background." *Linehan I*, 518 N.W.2d at 614. "[T]he need for a multi-factor analysis lies in the very purpose for civil commitment," and clinical and actuarial risk assessments are a necessary part of a district court's "thorough consideration of all relevant evidence" in determining whether to commit a person. *Ince*, 847 N.W.2d at 23–24. The supreme court has instructed district courts to carefully weigh such evidence, in combination with the *Linehan* factors, in order to draw appropriate conclusions under the commitment statute. *Id.* at 24. While he challenges risk assessment evidence's predictive power, Danforth has not shown how a district court's consideration of this evidence violates substantive due process rights. To the extent that this court and district courts alike are bound by supreme court precedent, it appears that Danforth's arguments to the contrary must fail.

11

Danforth claims that United States Supreme Court precedent requires the "full panoply" of procedural due process rights to be provided at civil commitment proceedings, and alternatively argues that traditional criminal due process protections are needed because the commitment process is punitive in nature. Danforth largely relies on *Specht v. Patterson*, in which the Court held that due process required that Colorado's commitment procedure provide various rights to those who would be committed, including the right to counsel, the right to present witnesses, the right to testify on their own behalf, the right to cross-examination, and the right to offer evidence. 386 U.S. 605, 610, 87 S. Ct. 1209, 1212 (1967). However, as was explicitly found by the Court in that case, the previous version of the commitment statute in Minnesota satisfactorily provided those rights. *Id.* at 610–11, 87 S. Ct. at 1212–13 (concluding that "[this] case is therefore quite unlike the Minnesota statute" which provided "procedural safeguards" that were absent from the Colorado civil commitment statute). The current statute continues to provide those rights. *See* Minn. Stat. §§ 253B.07, .08 (stating the various rights available during the commitment process).

Each protection that Danforth claims is required by *Specht* has later been held to not be required at civil commitment proceedings: the Confrontation Clause does not apply, *In re Irwin*, 529 N.W.2d 366, 373 (Minn. App. 1995), proof beyond a reasonable doubt is not required, *Addington v. Texas*, 441 U.S. 418, 430–31, 99 S. Ct. 1804, 1811–12 (1979), and there is no privilege against self-incrimination, *Allen v. Illinois*, 478 U.S. 364, 374, 106 S. Ct. 2988, 2994–95 (1986). Further, Minnesota case law has firmly

established that commitment laws are civil in nature, and courts have refused to apply criminal procedural standards to civil commitments. *See, e.g.*, *In re Commitment of Rannow*, 749 N.W.2d 393, 396–97 (Minn. App. 2008) (applying civil, and not criminal, procedural requirements to stipulation); *Joelson v. O'Keefe*, 594 N.W.2d 905, 910 (Minn. App. 1999) (providing that the Minnesota Supreme Court has rejected claims that jury trials are required for commitment proceedings), *review denied* (Minn. July 28, 1999). In light of this precedent, Danforth's procedural due process arguments are unavailing.

**D.**

Danforth argues that the district court's reliance on his 1996 conviction of first-degree criminal sexual conduct is a violation of his right of confrontation under *Crawford v. Washington*, which provided that defendants must be allowed to cross-examine testimonial witnesses pursuant to the Sixth Amendment's Confrontation Clause. 541 U.S. 36, 68–69, 124 S. Ct. 1354, 1374 (2004). At Danforth's 1996 trial, a videotaped interview with the victim was admitted as evidence because the victim was found incompetent to testify. *Danforth v. State*, 761 N.W.2d 493, 495 (Minn. 2009). Danforth first challenged the conviction on *Crawford* grounds in a postconviction petition, and our supreme court denied him relief. *Danforth v. State*, 718 N.W.2d 451, 454–55 (Minn. 2006). After review and remand by the United States Supreme Court, the Minnesota Supreme Court ultimately held that *Crawford* did not apply retroactively to past convictions and affirmed the denial of Danforth's postconviction petition. *Danforth*, 761 N.W.2d at 499–500; *see Danforth v. Minnesota*, 552 U.S. 264, 288–91, 128 S. Ct. 1029,

1045–47 (2008); *see also Danforth v. Crist*, 624 F.3d 915 (8th Cir. 2010) (denying Danforth's petition for federal habeas relief).

Danforth is now challenging the use of his conviction as evidence in this case. But he provides no support for his argument beyond a brief assertion that "the current use of the conviction in this case is a present violation of *Crawford*." This court will not consider "[a]n assignment of error based on mere assertion and not supported by any argument or authorities," unless "prejudicial error is obvious on mere inspection." *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (quotation omitted). No such error is obvious upon inspection. Aside from his argument's lack of support, this court follows "the underlying principle that an adjudication on the merits of an issue is conclusive, and should not be relitigated." *Loo v. Loo*, 520 N.W.2d 740, 744 (Minn. 1994). Insofar as Danforth is attempting to challenge his 1996 conviction once more, the Minnesota Supreme Court's denial of Danforth's *Crawford* claim is final.

**II.**

Danforth next challenges the district court's decision to admit certain evidence at his hearing. He first argues that the district court erred in considering Dr. Reitman's testimony regarding documents he had sent and received while incarcerated, alleging that this evidence was irrelevant and that its use at the hearing violated his First Amendment and Minnesota constitutional rights. Generally, "[t]he admission of evidence rests within the broad discretion of the [district] court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion." *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45−46 (Minn. 1997) (quotation omitted).

14

Under the special rules applicable to civil commitment proceedings, district courts "may admit all relevant, reliable evidence . . . without requiring foundation witnesses." Minn. Spec. R. Commit. & Treat. Act 15. The commitment statute provides that the district court "shall admit all relevant evidence at the hearing" and "make its determination upon the entire record pursuant to the Rules of Evidence." Minn. Stat. § 253B.08, subd. 7; *see also* Minn. Spec. R. Commit. & Treat. Act 23(e). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401.

Danforth claims that these documents and photographs had no probative value "on the probability of any molestation" and were irrelevant, and therefore should not have been admitted. Dr. Reitman testified at the hearing that Danforth had requested several books about nudity, urology, pediatrics, circumcision, and catheterization from a book seller, and that Danforth had several photographs of shirtless young boys in his prison cell. Danforth had also been in correspondence with an agency that, in Dr. Reitman's opinion, condoned pedophilia. Dr. Reitman concluded that these materials, in combination with other factors, led him to believe that Danforth was "actively seeking pornography," is aroused by children, and continues to believe that his actions are normal and healthy. The district court relied on these documents in making its commitment findings. The district court was tasked with determining whether Danforth has an inability to adequately control his sexual impulses, Minn. Stat. § 253D.02, subd. 15, and this evidence had a tendency to make that fact more probable, according to the testimony

15

of Dr. Reitman. While Danforth may disagree with Dr. Reitman's conclusions, he fails to rebut the presumption of admissibility and show that the district court abused its discretion in considering the evidence.

Danforth also asserts that the use of this evidence at the hearing violated his federal and state free-speech rights. Danforth cites cases that provide the contours of prison officials' ability to censor prisoner mail. *See, e.g.*, *Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874 (1989); *Procunier v. Martinez*, 416 U.S. 396, 94 S. Ct. 1800 (1974). The issue at hand, however, is not whether Danforth can have these materials at the prison, but whether they are admissible at the commitment hearing. In the criminal context, "[t]he First Amendment does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive." *In re Welfare of S.M.J.*, 556 N.W.2d 4, 6 (Minn. App. 1996). Here, the district court relied on this evidence in determining whether Danforth met the required elements for civil commitment as a person with a sexual psychopathic personality and as a sexually dangerous person. Danforth has provided no legal authority stating that a district court violates the First Amendment in doing so, as the "chilling effect" cases he cites are inapposite here. *Cf. Thomas v. Collins*, 323 U.S. 516, 539–540, 65 S. Ct. 315, 327 (1945) (analyzing requirement that speaker register before making lawful speech). Absent a showing that the evidence was irrelevant or unreliable, *S.M.J.*, 556 N.W.2d at 6, Danforth's free-speech challenge is meritless.

16

# III.

Danforth challenges the district court's decision to deny his motion to exclude actuarial and clinical risk assessment evidence, arguing that this evidence lacked adequate reliability. The admissibility of scientific evidence is governed by the two-pronged *Frye-Mack* standard. *State v. Roman Nose*, 649 N.W.2d 815, 818 (Minn. 2002). This court uses separate standards of review for each prong of the *Frye-Mack* test. *Goeb v. Tharaldson*, 615 N.W.2d 800, 815 (Minn. 2000). The first prong of *Frye-Mack* is whether the offered evidence is "generally accepted in the relevant scientific community," a question of law we review de novo. *Id.* at 814–15. The second prong is whether the evidence has "foundational reliability"—that is, whether the offering party has "establish[ed] that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *Id.* at 814 (quotation omitted). We review foundational reliability under an abuse of discretion standard. *Id.* at 815.

As a matter of law, the clinical and actuarial risk assessments that Danforth challenges are generally accepted by the Minnesota psychology community. The district court is required to utilize risk assessment evidence under the *Linehan* factors used to evaluate dangerousness, in order to determine "whether a person is highly likely to engage in future harmful sexual conduct." *Ince*, 847 N.W.2d at 24; *see also Linehan I*, 518 N.W.2d at 614. Dr. Reitman testified that each test he relied upon in making his prognosis is generally accepted and used among psychologists in Minnesota. The only

17

test directly challenged at the hearing as lacking general acceptance, the SVR-FV, was eliminated by Dr. Reitman from his analysis and was not relied upon by the district court.

Danforth has failed to show that the district court abused its discretion in admitting the results of the risk assessments. Dr. Reitman testified that each of the tests he relied upon has a high level of validity in predicting recidivism. He explained how the tests were applied to Danforth and his interpretation of their results. Danforth's counsel pointed out several potential flaws in Dr. Reitman's analysis on cross-examination, including the doctor's refusal to lower Danforth's recidivism risk due to his age and his implementation of Danforth's criminal history in the tests. Dr. Reitman defended his analysis against these claims, and the district court was free to exercise its discretion in weighing the reliability and relevance of the risk assessment evidence. Therefore, the district court's decision to credit Dr. Reitman's testimony and find that the risk assessment test results had foundational reliability was not an abuse of discretion.

**Affirmed.**